No. 13-3059

Oral Argument Not Yet Scheduled

In The
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

RONALD WILLIAMS,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 1: 12-cr-22

BRIEF OF APPELLANT

Jonathan Zucker, #384629
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
(202) 6724-0784

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A. PARTIES AND AMICI.** Ronald Williams and the United States of America appeared in the United States District court for the District of Columbia and are before this Court. There are no intervenors or *amici*.

### B. RULINGS UNDER REVIEW

This appeal is from judgment of the district court (the Honorable Beryl A. Howell) adjudging appellant guilty after a jury trial. Appellant seeks review of the sufficiency of the evidence of conspiracy and the trial court's evidentiary ruling precluding him from introducing evidence of prior acquittals. The transcript pages of the court's oral rulings regarding these issues are reproduced in the Appendix at pages 64, 114-115.

Appellant also seeks direct review of claims that he was denied the effective assistance of counsel in violation of his Sixth Amendment right.

### C. RELATED CASES

The case on review was not previously before this Court. It was previously before the District Court as a joint trial with codefendant Maurice Williams after which a mistrial was declared as to Ronald Williams. Maurice Williams' appeal from his conviction at the joint trial is currently before this court. *United States v. Maurice Williams*, Appeal No. 13-3034.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

Jurisdictional Statement .......................................................................................... 1

Statement of the Issues ........................................................................................... 2

Constitutional provisions, statutes and rules ......................................................... 2

Statement of the Case ............................................................................................. 3

Statement of Facts .................................................................................................. 4

    A. Trial Evidence .............................................................................................. 4

        1. *September 16, 2011-Acquitted Conduct* ............................................. 4

        2. *October 21, 2011 Events* ................................................................... 5

        3. *The Defense Case* ............................................................................... 7

    B. Post-Verdict ................................................................................................. 7

SUMMARY OF THE ARGUMENTS ..................................................................... 8

ARGUMENTS .......................................................................................................... 9

I.   INSUFFICIENT EVIDENCE TO SUPPORT
    CONSPIRACY CONVICTION ........................................................................ 9

    A.   Standard of Review ...................................................................................... 9

    B.   No Evidence of Agreement Element ......................................................... 10

II.  DISTRICT COURT ABUSED ITS DISCRETION IN
    PRECLUDING EVIDENCE THAT DEFENDANT
    WAS ACQUITTED OF THE SEPTEMBER 16, 2011
    DISTRIBUTION CHARGES ............................................................................ 16

i

    A.   Standard of Review ................................................................ 16

    B.   Defendant's Prior Acquittals Plainly Bear on His Criminal
        Intent on September 16, 2011--*A Matter That Could Be
        Determinative of Guilt or Innocence* ...................................... 17

III.   DEFENDANT WAS DENIED THE EFFECTIVE
     ASSISTANCE OF COUNSEL BEFORE AND DURING TRIAL ............. 19

    A.   Legal Standards ................................................................... 19

    B.   Record Conclusively Shows that Defendant is Entitled
        To Relief for Counsel's Ineffectiveness at Trial ...................... 19

        1.   *Counsel Failed to Recognize an Evidentiary Basis
           for Admitting Maurice's Admissions of Guilt* .................... 20

           a.   *Counsel Misunderstood the Unavailability
               Requirement* ........................................................ 21

           b.   *Counsel Misunderstood the Corroboration Requirement* ....... 23

        2.   *Counsel's Failure to Impeach a Key
           Government Witness with Prior Inconsistent Testimony* ................ 24

        3.   *Counsel Failed to Object to the Prosecutor's
           Improper Argument* ...................................................... 26

        4.   *Cumulative Effect of Counsel's Deficiencies at Trial
           Prejudiced Defendant* ................................................... 27

    C.   This Case Should Be Remanded For a Hearing
       On Defendant's Claim that Counsel Was
       Ineffective During Plea Negotiations ..................................... 28

        1.   *Colorable Claim of Deficient Performance* ..................... 28

        2.   *Colorable Claim that Defendant Was Prejudiced
           By Counsel's Deficient Performance* ............................. 31

CONCLUSION ................................................................................................ 34

CERTIFICATE OF COMPLIANCE .................................................................. 35

CERTIFICATE OF FILING AND SERVICE ...................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Colson v. Smith,*
  438 F.2d 1075 (5th Cir. 1971)................................................................ 29

*Estelle v. Smith,*
  451 U.S. 454 (1981)............................................................................. 22

*Herring v. Estelle,*
  491 F.2d 125 (5th Cir. 1974)............................................................... 29

*Ingram v. United States,*
  360 U.S. 672 (1959)............................................................................. 17

*In re Sealed Case,*
  488 F.3d 1011 (D.C. Cir. 2007)...................................................... 30, 32

*Lafler v. Cooper,*
  __ U.S. __; 132 S. Ct. 1376 (2012)................................................ 28, 31

*Libretti v. United States,*
  516 U.S. 29 (1995)............................................................................... 29

*Lindstadt v. Keane,*
  239 F.3d 191 (2d Cir. 2001)............................................................... 20

*Missouri v. Frye,*
  __U.S. __; 132 S. Ct. 1399 (2012)................................................. 29, 30

*Mitchell v. United States,*
  526 U.S. 314 (1999)............................................................................. 22

*Padilla v. Kentucky,*
  559 U.S. 356 (2010)............................................................................. 29

*People v. Bedoya,*
  758 N.E.2d 366 (Ill. App. Ct. 2001)................................................... 18

*Purdy v. United States,*
    208 F.3d 41 (2d Cir. 2000)............................................................ 29

*Reynoso v. Giurbino,*
    462 F.3d 1099 (9th Cir. 2006)...................................................... 24

*Stouffer v. Reynolds,*
    168 F.3d 1155 (10th Cir.1999)................................................ 20, 24

*\*Strickland v. Washington,*
    466 U.S. 668 (1984) ................................................................ 19, 20

*United States v. Amerson,*
    185 F.3d 676 (7th Cir.1999)......................................................... 23

*United States v. Andrews,*
    532 F.3d 900 (D.C. Cir. 2008) ....................................................... 9

*United States v. Bailey,*
    319 F.3d 514 (D.C. Cir. 2003) ..................................................... 18

*\*United States v. Bell,*
    516 F.3d 432 (6th Cir. 2008)........................................................ 27

*United States v. Bigesby,*
    685 F.3d 1060 (D.C. Cir. 2012) ................................................... 21

*United States v. Boidi,*
    568 F.3d 24 (1st Cir. 2009) .......................................................... 12

*United States v. Boyd,*
    478 F. App'x 826 (5th Cir. 2012) ................................................. 12

*\*United States v. Brown,*
    726 F.3d 993 (7th Cir, 2013)...................................................... 10

*United States v. Contreras,*
    249 F.3d 595 (7th Cir.2001).......................................................... 12

v

*United States v. Day,*
   969 F.2d 39 (3d Cir. 1992)..................................................................... 29, 30

*United States v. Duenas,*
   691 F.3d 1070 (9th Cir. 2012)................................................................... 14

*United States v. Earle,*
   375 F.3d 1159 (D.C. Cir. 2004) ................................................................ 17

*United States v. Feola,*
   420 U.S. 671 (1975) .................................................................................. 17

*United States v. Fries,*
   725 F.3d 1286 (11th Cir. 2013) ................................................................ 10

*United States v. Garcia,*
   986 F.2d 1135 (7th Cir.1993).................................................................... 23

*United States v. Gaskins,*
   690 F.3d 569 (D.C. Cir. 2012) .................................................................. 17

*United States v. Gaviria,*
   116 F.3d 1498 (D.C. Cir. 1997)........................................................... 30, 32

*United States v. Henderson,*
   736 F.3d 1128 (7th Cir. 2013)................................................................... 23

*United States v. Howard,*
   966 F.2d 1362 (10th Cir.1992).................................................................. 13

*United States v. Iriarte-Ortega,*
   113 F.3d 1022 (9th Cir. 1997)................................................................... 13

*United States v. Johnson,*
   592 F.3d 749 (7th Cir. 2010) .................................................................... 11

*United States v. Jones,*
   713 F.3d 336 (7th Cir. 2013) .................................................................. 11

*United States v. Lennick,*
    18 F.3d 814 (9th Cir. 1994)................................................................. 13

*United States v. Lopesierra-Gutierrez,*
    708 F.3d 193 (D.C. Cir. 2013) ......................................................... 10

*United States v. McCoy,*
    215 F.3d 102 (D.C. Cir. 2000) ......................................................... 30

*United States v. Mendoza-Gonzalez,*
    363 F.3d 788 (8th Cir. 2004) ........................................................... 11

*United States v. Moore,*
    651 F.3d 30 (D.C.Cir. 2011) ............................................................ 21

* *United States v. Morgan,*
    581 F.2d 933 (D.C. Cir. 1978) ......................................................... 16

*United States v. Morris,*
    836 F.2d 1371 (D.C.Cir.1988) ......................................................... 12

*United States v. Parker,*
    554 F.3d 230 (2d Cir. 2009) ............................................................ 12

*United States v. Price,*
    13 F.3d 711 (3rd Cir. 1994)............................................................... 12

*United States v. Thompson,*
    721 F.3d 711 (D.C. Cir. 2013) .................................................. 19, 30

*United States v. Torres,*
    604 F.3d 58 (2d Cir. 2010)............................................................... 11

*United States v. Vaughn,*
    722 F.3d 918 (7th Cir. 2013)............................................................ 10

*United States v. Villasenor,*
    894 F.2d 1422 (5th Cir. 1990)......................................................... 14

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 13-3059

———————————————

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD WILLIAMS,

Appellant.

———————————————

OPENING BRIEF OF APPELLANT

———————————————

**Jurisdictional Statement**

On January 26, 2012, Ronald Williams was named in an indictment along
with his brother Maurice Williams. App: 32-34.[1]  The district court had
jurisdiction pursuant to 18 U.S.C. §3231.  This is an appeal from a final judgment
in a criminal case by the United States District Court for the District of Columbia
entered on June 13, 2013. App: 40.  A notice of appeal[2] was filed within 10 days of
judgment in compliance with Fed.R.App.P. 4(b) and this Court has jurisdiction
pursuant to 28 U.S.C. § 1291.

———————————

[1] The pleadings and transcripts are arranged in chronological order within the
Appendix and are cited as "App: _."

[2] App: 48.

**Statement of the Issues**

1.  Whether defendant's conspiracy conviction must be reversed because there is no evidence of an agreement.

2.  Whether the court erred in precluding as "irrelevant" evidence that defendant was acquitted of distribution offenses which was the only evidence that defendant distributed drugs during the charged conspiracy.

3.  Whether defendant was denied his Sixth Amendment right to competent counsel as a result of the cumulative effect of counsel's trial errors.

4.  Whether remand for an evidentiary hearing on counsel's ineffective assistance is warranted where defendant alleges that counsel did not communicate the government's Rule 11(c)(1)(C) plea offer to him prior to its expiration, did not advise him of his career offender status and affirmatively misadvised him that his sentencing exposure was no more than ten years when in fact he faced a 10 year mandatory minimum and a guideline range of 360 to life.

**Constitutional provisions, statutes and rules**

Applicable Constitutional provisions, statutes and rules appear in an Addendum.

2

## Statement of the Case

The indictment charged Ronald Williams ("Ronald") and Maurice Williams ("Maurice") with Conspiracy to Distribute and Possess with Intent to Distribute cocaine, cocaine base and marijuana from on or about September 16, 2011 through on or about October 21, 2011. Ronald was charged in one count of unlawful distribution of cocaine and one count of unlawful distribution of cocaine base on September 16, 2011. Both defendants were charged in one count of possession with intent to distribute cocaine and one count of possession with intent to distribute more than 28 grams of cocaine base on October 21, 2011. Maurice was charged in one count of simple possession of marijuana on October 21, 2011. Defendants pleaded not guilty to all counts and were jointly tried before the Honorable Beryl A. Howell commencing on October 22, 2012.

On October 31, 2012 the jury returned partial verdicts finding Ronald not guilty of the two substantive counts of distribution on September 16, 2011 and finding Maurice guilty on all counts. Jurors were unable to reach a unanimous verdict as to the remaining three counts against Ronald and on November 1, 2012, the court granted a mistrial.

Ronald was retried on those counts and was found guilty on February 27, 2013. On June 12, 2013 defendant was sentenced as a career offender to 156 months incarceration. App: 42.

**Statement of Facts**

### A. Trial Evidence

At retrial the government relied primarily on evidence of defendant's acquitted conduct from September 16, 2011 and the seizure of drugs on October 21, 2011 from Maurice's car and home. It also introduced expert testimony in the field of drug distribution in the District of Columbia and a stipulation that defendant had two prior drug convictions that were more than a decade old.

### 1. *September 16, 2011- Acquitted Conduct*

On September 16, 2011, Metropolitan Police set up an observation post of a row house on 9th Street, NW. App: 71-73. Officer Vincent Norris observed defendant sitting on the front porch watching an individual wash his car when an unidentified male walked up and spoke with defendant. App: 73-74. They both entered the house for a brief period. App: 74-75. Norris followed the man as he walked away from the house until an arrest team stopped him.[3] App: 75.

When Norris returned to the observation post he saw a male later identified as Gary Pounds stop his vehicle in front of the house, get out and speak with defendant on the porch. About the same time that Pounds pulled up another

---

[3] Investigator Hallahan testified that when he approached the man and identified himself as "Police" the man put what appeared to be two "small bags of white powder cocaine" in his mouth. App: 91-92. They were unable to recover the evidence and the man was not arrested. *Id.*

individual later identified as Clinton Baker, approached the house on foot. All

three entered the house and exited a short time later. App: 76, 79. Norris didn't

hear any conversation nor see what occurred inside but gave descriptions of the

two men to the arrest teams as they left the porch. App: 78-80.

Officer Kenneth Thompkins stopped Pounds' vehicle and recovered

"powder cocaine"[4] that was packaged inside a heat-seal pouch. Thompkins

claimed that the heat seal was a type he had never seen before. App: 84-85. That

evidence, however, had been destroyed prior to trial. Thompkins explained that it

was destroyed because the case had been resolved. App: 86-87.

When Baker was stopped in the alley of the 5200 block of Illinois Avenue

he dropped two small Ziploc bags containing a white powdery substance. App: 93.

Officer Amador field-tested them and arrested Baker. App: 94.

### 2. *October 21, 2011 Events*

On October 21, 2011, Officer Thompkins observed Maurice exit the house

and drive away in a vehicle that was parked in front. App: 88. A search of that

vehicle recovered 123 grams of cocaine and a small quantity of marijuana in the

---

[4] Thompkins' report described the item seized as "white rock substance." App. 56. Counsel, however, neither objected on hearsay grounds to the admission of Thompkins testimony nor impeached him with that inconsistent description of the item seized.

center console. App: 89-90. Approximately $1,300 in US currency was recovered from Maurice. *Id*.

Police returned to the house to execute a search warrant later that night. At that time, defendant was on the front porch and his mother was inside. App. 95-96, 127.

Evidence seized from the house included loose white rock substance inside the pocket of a jacket hanging on the banister in the entryway. App: 98-99. Two brown paper bags containing unused plastic heat sealed type pouches were on top of a china cabinet behind the front door. App. 100-101. A coffee mug on the table of that cabinet contained a plastic twist with a white rock and a Ziploc containing multiple Ziplocs with white rock. App. 102. Loose green weed-like substance was on top of a chair cushion in the dining room. App: 103. Two digital scales and plastic twists containing white rock and green weed-like substances were in the sunroom/storage room. App: 104. Empty Ziplocs were in the area leading to the basement. App: 105. Inside a grill in the backyard was an empty plastic sandwich bag containing white powder residue. App: 106.

Defendant did not attempt to flee. App: 97, 129-130. He walked out to the sidewalk with Officer Hyman and spoke with him. App: 127, 129. No contraband was found in defendant's car or on his person. App: 128-129. He was not arrested and was allowed to leave. App: 127.

6

### 3. *The Defense Case*

Christine Coates and Ronald have been together since 2002 and were living in Maryland prior to his arrest. App: 117, 124. She has not known Ronald to have anything to do with drugs during the twelve years that they have been together. App: 124.

Coates testified that Maurice lives with his mother in her house on 9th Street where Maurice has lived his entire life. App: 117-119, 120-121. She explained that "mom like[s] to hoard things" and that Maurice will not allow people in the house to clean up making the living conditions there "nasty" and "not good." App: 122, 125. Ronald, who is approximately fifteen years older than Maurice, doesn't "get along too much" with Maurice because of the condition of the house. App: 119, 123.

### B. Post-Verdict

Prior to sentencing, defendant stated in an affidavit that counsel never communicated the seven year plea offer to him until after it had expired. Counsel advised defendant that if he lost at trial he could not get more than ten years and never told him he would be considered a career offender under the sentencing guidelines. App: 38-39. Defendant stated that he would have accepted the 7 year plea offer if he had understood his actual sentencing exposure. *Id.* Determining that an ineffective assistance claim was premature, the court denied the motion

7

without prejudice and sentenced defendant on June 12, 2013 to 156 months incarceration.  App: 42.

## SUMMARY OF THE ARGUMENTS

The evidence is insufficient to sustain a conspiracy conviction. There was no evidence defendant communicated with, coordinated with or otherwise acted in concert with anyone to distribute or possess with intent to distribute drugs. The prosecution introduced evidence that defendant distributed drugs on September 16, 2011. That evidence which led to an acquittal at the first trial did not establish a conspiracy.  Nor did his brother's possession of drugs found in his car and home establish a conspiracy.

The trial court erred in precluding as "irrelevant" defendant's acquittal because the acquittal would have been relevant in disproving defendant's participation in the charged conspiracy and would have been relevant to rebut the inference that defendant was convicted of or committed the September 16, 2011 distributions.

The cumulative effect of counsel's trial errors denied defendant his right to effective assistance of counsel.  The defense theory was that defendant's brother and prior codefendant was responsible for the drugs recovered in his brother's home, not the defendant.  Counsel failed to develop this theory when he was precluded from introducing his brother's admissions that the recovered cocaine

8

was his.  The evidence was precluded because counsel misunderstood applicable rules of evidence.  Counsel's failure to impeach lead officer with obvious inconsistent prior testimony and failure to object to the prosecutor's improper argument regarding defendant's prior convictions contributed to the ineffective assistance.

Remand for an evidentiary hearing is warranted on defendant's claim of counsel's ineffective assistance during plea negotiations.   Defendant raises a colorable claim of ineffective assistance during plea negotiation by alleging that counsel failed communicate a plea offer and accurately advise him of his sentencing exposure and where he received a sentence substantially greater than the plea offer.

## ARGUMENTS

## I.   INSUFFICIENT EVIDENCE TO SUPPORT CONSPIRACY CONVICTION

### A.   Standard of Review

In reviewing a properly preserved claim challenging the sufficiency of evidence, this Court "must accept the jury's guilty verdict if we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Andrews*, 532 F.3d 900, 903 n. 1 (D.C. Cir. 2008)(internal quotations and citation omitted).  When, as here, a defendant fails to renew his motion for judgment of acquittal (MJOA) at the close of all the evidence,

sufficiency challenges are considered waived unless "'declining to consider the sufficiency of the evidence ... cause[s] a manifest miscarriage of justice." *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 206 (D.C. Cir. 2013). This standard is met when either "the record is devoid of evidence of an essential element of the crime or that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013)(internal quotation and citation omitted.)

Because the record in this case is devoid of evidence supporting the agreement element of the conspiracy offense, reversal is warranted. Alternatively, counsel's waiver of the sufficiency issue is ineffective assistance because viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the agreement element of conspiracy beyond a reasonable doubt.

## B.    No Evidence of Agreement Element

A drug-distribution conspiracy under 21 U.S.C. § 846 "requires proof that the defendant knowingly agreed—either implicitly or explicitly—with someone else to distribute drugs." *United States v. Vaughn*, 722 F.3d 918, 928 (7th Cir. 2013). Although a drug sale is itself an agreement, the substantive crime "cannot also count as the agreement needed to find conspiracy." *United States v. Brown*, 726 F.3d 993, 997-998 (7th Cir, 2013)("conspiracy to traffic drugs requires an agreement to advance *further* distribution.")

10

Moreover, the jury's inference of agreement must be "reasonably based on evidence presented at trial," not on speculation. *United States v. Torres*, 604 F.3d 58, 67 (2d Cir. 2010). Each step in the inferential chain must be supported by evidence that allows the jury to "draw reasonable inferences from basic facts to ultimate facts." *United States v. Jones,* 713 F.3d 336, 340 (7th Cir. 2013).

The trial court denied defendant's MJOA at the close of the government's case in chief on the ground that Defendant "had to be getting those drugs from someplace, and [from] other participants in the conspiracy." App: 114-115. The court also indicated that "at a minimum" there was a conspiracy between defendant and Maurice based on the events of October 21, 2011. *Id.*

While it is not necessary for conspirators to be identified, there must be some evidence of an agreement with another to commit a crime "*other than* the crime that consists of the sale itself." *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010)(internal quotations and citation omitted). *See e.g., United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004)(the existence of coconspirators could be inferred from fingerprints on the drug packaging that did not belong to defendant).

The government produced no evidence from which to infer the existence of a conspirator from whom defendant "had to be getting those drugs." No fingerprints were obtained from the packaging to suggest that anyone else was

11

involved.  There was no evidence that the crack and the powder cocaine allegedly

distributed on September 16, 2011, were obtained at the same time, from the same

place or from the same person or persons. [5]  The modest quantities that defendant

was suspected of distributing on September 16, 2011might have been stolen, or

acquired long before that date.[6]  Even if "those drugs" were acquired at the same

time and from the same place or person, the purchase or sale of a bulk quantity of

illegal drugs alone is insufficient to support a conspiracy conviction.[7]  Assuming

---

[5] *United States v. Boyd*, 478 F. App'x 826, 830 (5th Cir. 2012)("it cannot be
inferred whether the unknown source or sources were part of a conspiracy or
merely "arms-length" suppliers to [defendant]"); *United States v. Morris*, 836 F.2d
1371 (D.C.Cir.1988)(rejecting argument that a conspiratorial agreement could be
shown based solely on a drug dealer's occasional purchases from a supplier).

[6] Drug expert Abdulla valued the two Ziplocs of crack seized from Baker at $10
apiece.  Tr. 2/26/13, p. 277.   He valued the powder seized from Pounds at $100 to
$120.  Tr. 2/26/13, p. 278.

[7] *United States v. Boidi*, 568 F.3d 24, 30 (1st Cir.2009)("Evidence that a buyer
intends to resell the product instead of personally consuming it does not
necessarily establish that the buyer has joined the seller's distribution conspiracy.
This is so even if the seller is aware of the buyer's intent to resell "); *United States
v. Parker*, 554 F.3d 230, 235–36 (2d Cir. 2009)(when wholesale quantities of drugs
are involved, "the liability of buyer and seller for having conspired together to
transfer drugs would depend not on the seller's mere knowledge of the buyer's
intent to retransfer, but on a further showing of the seller's interest, shared with the
buyer, in the success of the buyer's resale"); *United States v. Price*, 13 F.3d 711,
727 (3rd Cir. 1994)("[T]hose courts that have addressed the purchase-for-
redistribution issue have determined that such a purchase is not sufficient, in and of
itself, to prove membership in the larger conspiracy."); *United States v. Contreras*,
249 F.3d 595, 600 (7th Cir.2001)(holding that evidence that the defendant bought
"ten one-kilogram quantities of cocaine ... over a period of six to ten months" from
the same supplier was only evidence of a buyer-seller relationship and not a

that it is reasonable to infer that defendant distributed drugs on September 16, 2011, it is pure speculation to infer from that basic fact that he agreed with the supplier to distribute drugs beginning on or about that date.

Similarly, the record is devoid of any evidence from which to reasonably infer an agreement between defendant and his brother to violate the drug laws. There was no evidence of any interaction between them. There was no phone call, email, text, or any other communication between them or with an intermediary during the timeframe of the charged conspiracy. The government presented no evidence that Ronald and Maurice were ever at the house (or anywhere else) at the same time. Defense witness Christine Coates, who testified that defendant and his brother "don't get along too much," introduced the only evidence of their relationship. App: 119, 123, 126.

While coordination between people can be circumstantial proof of agreement, there was no evidence in this case of any coordination. See, *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 *opinion amended on denial of reh'g*, 127 F.3d 1200 (9th Cir. 1997)(as the degree of coordination rises, the likelihood

---

conspiracy); *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994)("To show a conspiracy, the government must show not only that Lennick gave drugs to other people knowing that they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs."); *United States v. Howard*, 966 F.2d 1362, 1364 (10th Cir.1992) ("The huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself this is not enough to convict defendant.")

that their actions were driven by an agreement increases.)  There was no statement introduced by either of them from which to infer they were working in concert to distribute or possess controlled substances.  *Cf. United States v. Duenas,* 691 F.3d 1070, 1085 (9th Cir. 2012)(court found the admission by defendant's spouse that "we" exchange methamphetamine for merchandise, "more than supports a finding that Lou and Ray were working in concert to distribute the drugs.")  It was not known when, how or from where the drugs and paraphernalia seized from the house on October 21, 2011got there.  *United States v. Villasenor*, 894 F.2d 1422, 1430 (5th Cir. 1990)(reversing conspiracy conviction where over 1000 pounds of marijuana were discovered in room with "an industrial vacuum cleaner, numerous trash bags, rolls of duct tape, and plastic self-sticking paper, which is commonly used to package marihuana" but where there was "no evidence at all as to when, or how, or from where the marijuana came").

The government argued that the two tiny packages of crack seized from Baker on September 16, 2011 and swallowed by the unidentified suspected buyer were similar to the 48 tiny bags of crack recovered from the house on October 21, 2011.  App: 132.  That packaging, however, was not distinctive or otherwise unique.  According to the drug expert, that packaging was consistent with how crack cocaine is "most commonly" packaged for street sale distribution in the District of Columbia i.e. in small Ziploc bags about "the size of my pinky nail."

14

App: 109.  Moreover, those small bags are available "in a lot of corner or market stores within the city."  App: 110.

That the evidence in this case did not support a reasonable inference of an agreement is evident from the government's need to exaggerate and resort to speculation in its closing argument.  The government argued that Ronald "was getting instructions from somewhere."  App: 133-134.  Yet it presented no evidence of the existence or nature of any instruction intended for or received by defendant.  In fact, other than the three suspected drug buyers who briefly spoke with defendant on the porch on September 16, 2011, there was no evidence of any communication, oral or written, between Ronald and anyone else.

The prosecutor contended that Ronald played the role of a "typical" street level distributor in a conspiracy.  App: 132.  Yet drug expert Abdulla testified that the "typical" street level distributor is decades younger than defendant and distributes on the street, not from houses.  App: 113.  The government claimed that defendant spent "so much time on the porch" that his customers knew where to find him.  App: 134.  The evidence demonstrated only that over the thirty six day period of the charged conspiracy, defendant was on the porch for about one half hour on September 16, 2011 and when police arrived to execute the search warrant on October 21, 2011.  App: 73, 92, 95.

15

Because the record is devoid of evidence of the essential agreement element of conspiracy, defendant's conspiracy conviction should be vacated for insufficient evidence and the remaining convictions vacated and remanded for a new trial. Alternatively because no rational juror could have found the agreement element of conspiracy beyond a reasonable doubt, counsel's failure to renew the motion for judgment of acquittal at the close of all evidence and preserve the sufficiency claim for appeal was ineffective assistance.

## II.    DISTRICT COURT ABUSED ITS DISCRETION IN PRECLUDING EVIDENCE THAT DEFENDANT WAS ACQUITTED OF THE SEPTEMBER 16, 2011 DISTRIBUTION CHARGES

Prior to opening statements, defense counsel informed the court that he wanted to introduce the fact that defendant had been acquitted of the September 16, 2011 substantive distribution charges. App: 63-64. The court summarily denied counsel's request ruling that "what the other jury decided about that [] is not relevant to this jury's evaluation of the evidence." App: 64.

### A.    Standard of Review

Where the question is one of relevance, a trial court abuses its discretion to admit or exclude evidence when it plainly appears that the excluded evidence bears on a matter that could be determinative of guilt or innocence. *United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978).

16

**B.**    **Defendant's Prior Acquittals Plainly Bear on His Criminal Intent on September 16, 2011--A Matter That Could Be Determinative of Guilt or Innocence**

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *United States v. Earle*, 375 F.3d 1159, 1162 (D.C. Cir. 2004). Defendant's criminal intent with respect to the September 16, 2011 substantive distribution charges is a fact of consequence to the conspiracy to distribute beginning on or about that date. *Ingram v. United States,* 360 U.S. 672, 678 (1959)("[c]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.") *See also, United States v. Feola*, 420 U.S. 671, 686 (1975); *United States v. Gaskins*, 690 F.3d 569, 577 (D.C. Cir. 2012).

The *sole* evidence offered to prove the existence of a narcotics conspiracy beginning on or about September 16, 2011 that had distribution as one of its objectives, was defendant's suspected distributions on that date. The fact that the government failed to convince a jury in a previous trial, while bringing its prosecutorial power to bear directly upon proving that the defendant committed those crimes, plainly has some tendency to make the existence of defendant's

17

intent to conspire to sell drugs on September 16, 2011, less probable than it would be without that evidence.

Defendant's acquittals are also relevant to rebut the inference that he was convicted of those crimes. See, *United States v. Bailey*, 319 F.3d 514, 518 (D.C. Cir. 2003); *Williams v. United States,* 77 A.3d 425, 433 (DC 2013); *See also, People v. Bedoya,* 325 Ill. App. 3d 926, 943, 758 N.E.2d 366, 381 (Ill. App. Ct. 2001)("The jury could have been left with the false impression that those 'offenses' were alive and pending. Fairness required disclosure [of the acquittals].")

Here, it is plausible that jurors made a mistaken inference that the defendant was convicted of the September 16, 2011 distribution crimes. There was evidence that the drugs the government claimed defendant distributed on that date were destroyed because those cases were concluded. Officer Thompkins explained that the drugs seized from Pounds no longer exist because all narcotics are destroyed "once the case is resolved, due to limited storage." App: 87. Similarly, with respect to the items seized from Baker, the parties stipulated that after analysis by the chemist "the drug exhibit was destroyed pursuant to Metropolitan Police Department's evidence retention guidelines."[8]  App: 107.

---

[8] The jurors were instructed that it "should consider any stipulation of fact to be undisputed evidence.  App: 131.

It was reasonable for jurors to infer from the absence of substantive charges for the transactions with Pounds and Baker and the fact that the evidence was destroyed, that defendant's case with respect to those crimes had been resolved. The court, therefore, erred in ruling that defendant's acquittals were irrelevant to the instant proceedings.

## III.  DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BEFORE AND DURING TRIAL

### A. Legal Standards

To prevail on a claim of ineffective assistance of counsel, a party must show that that counsel's errors did not meet the standard of "reasonableness under prevailing professional norms." *Strickland v. Washington,* 466 U.S. 668, 687 (1984); See also *United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013). Under this circuit's precedent, "where a defendant raises a 'colorable and previously unexplored' ineffective assistance claim on appeal," remand for further district court proceedings is appropriate "unless the 'record alone conclusively shows that the defendant either is or is not entitled to relief.'" *Id.*

### B.  Record Conclusively Shows that Defendant is Entitled To Relief for Counsel's Ineffectiveness at Trial

In judging counsel's performance under *Strickland,* the question is not whether "a particular act or omission" was unreasonable, but whether "in light of all the circumstances, the identified acts or omissions were outside the wide range

19

of professionally competent assistance." *Strickland,* at 689-690.   In other words, a court must consider the cumulative effect of counsel's errors. *See Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001)(holding that although some of the errors counsel made would not alone amount to constitutional ineffectiveness, "the cumulative weight of error convinces this Court that the ineffectiveness of counsel reached the constitutional threshold"); *Stouffer v. Reynolds,* 168 F.3d 1155, 1163-64 (10th Cir.1999)("Taken alone, not one instance establishes deficient representation.  However, cumulatively, each failure underscores a fundamental lack of formulation and direction in presenting a coherent defense."); *Wade v. Calderon,* 29 F.3d 1312, 1319 (9th Cir.1994)(A defendant may prove that he has suffered ineffective assistance of counsel based on the cumulative effect of errors.) Because the cumulative effect of counsel's performance at trial denied defendant the assistance of counsel guaranteed by the Sixth Amendment, a new trial is warranted.

### 1.    *Counsel Failed to Recognize An Evidentiary Basis for Admitting Maurice's Admissions of Guilt*

In an effort to develop the defense theory that Maurice was the drug dealer in this case[9] counsel indicated that he wanted to introduce Maurice's admissions that the government introduced at the first trial regarding the cocaine recovered

---

[9] App: 139.

from his vehicle on October 21, 2011.[10]  App: 65.  The government objected on

hearsay grounds and the court invited defense counsel to advise it in the morning

on what hearsay exception he was relying.  App: 65-66.  When counsel was unable

to identify any applicable hearsay exception, the court pointed out that the "most

obvious" exception would be a statement against interest[11] but that counsel hadn't

proffered anything to the Court to establish that Maurice was unavailable.  App:

68. Counsel erroneously conceded he could not do so.  App: 68-69.  The court also

suggested that the corroborating circumstances requirement might not be satisfied

because Maurice's statement including that "some guy on the street handed him

the drugs … on loan. Without payment" was "fairly incredible."  App: 69.

Counsel concurred with the court on that point as well.  App: 70.

        a.    *Counsel Misunderstood the Unavailability Requirement*

      Among other reasons, a declarant is unavailable as a witness if the declarant:

---

[10] After Maurice Williams was arrested on October 21, 2011 for possessing 1/8 kilo of cocaine found in his car, he told Investigator Hyman that he got the cocaine "from some guy that he had just met from southeast" and that it was worth $3,500. App: 57-59.  At the first trial the government used these admissions to emphasize Maurice's guilt in closing argument.  App: 61.

[11] A statement is admissible as non-hearsay under Rule 804(b)(3) if "(1) the declarant was unavailable, (2) the statement was against the declarant's interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement." *United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir. 2012) quoting *United States v. Moore,* 651 F.3d 30, 82 (D.C.Cir. 2011).

> **(1)** is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; [or]
>
> **(2)** refuses to testify about the subject matter despite a court order to do so;

Fed. R. Evid. 804(a).

At the first trial, Maurice did not waive his Fifth Amendment privilege and did not testify. Maurice was not sentenced until April, 2013, after the instant trial. Consequently, at the time of defendant's retrial, Maurice could not be compelled to testify because his Fifth Amendment privilege still applied.

> Where a sentence has yet to be imposed, however, this Court has already rejected the proposition that 'incrimination is complete once guilt has been adjudicated,' *Estelle v. Smith*, 451 U.S. 454, 462 (1981), and we reject it again today.

*Mitchell v. United States,* 526 U.S. 314, 325–30 (1999). Because of the danger of responding to questions that might have an adverse impact on his sentence or on his prosecution for other crimes the government in *Mitchell*, acknowledged that a defendant awaiting sentencing may assert the privilege against self-incrimination if called as a witness in the trial of a codefendant. *Mitchell v. U.S.,* 526 US at 326-327. Counsel's inability to proffer this obvious basis for the court to find Maurice was "unavailable" fell below professionally competent assistance.

b.    *Counsel Misunderstood the Corroboration Requirement*

Rule 804(b)(3) does not require that the district judge be "completely

convinced" of the truth of the statement for it to be admissible. *United States v.*

*Garcia,* 986 F.2d 1135, 1141 (7th Cir.1993).   That court reasoned,

> the corroboration requirement of 804(b)(3) is a preliminary question
> as to the admissibility of evidence, not an ultimate determination as to
> the weight to be given such evidence...The district court must find
> only that sufficient corroborating circumstances exist and then permit
> the jury to make the ultimate determination concerning the truth of the
> statements.

*Id.* More recently the seventh circuit explained that

> In the law of evidence, corroboration of testimony just means that
> there is some evidence besides the testimony itself to indicate that the
> testimony is trustworthy—not that it is necessarily true, but (when it is
> a hearsay statement) that it is sufficiently worthy of belief to have
> value as evidence despite the impossibility of subjecting the declarant
> to the fires of cross-examination. For the corroboration to "clearly"
> indicate the trustworthiness (though, again, not necessarily the truth)
> of the out-of-court statement requires a more probing inquiry, for
> example into the motive of the declarant to lie.

*United States v. Henderson*, 736 F.3d 1128, 1131 (7th Cir. 2013) quoting *United*

*States v. Amerson,* 185 F.3d 676, 691 (7th Cir.1999) (Posner, J., dissenting)

The portion of Maurice's statement that the court suggested was "fairly

incredible" relates to Maurice's drug source.  Defendant, however, was not

offering the statement to prove that "some guy" in southeast gave Maurice the

drugs "on loan."  Rather, it was offered to demonstrate Maurice's knowing

possession of the cocaine that was concealed in the car he was driving when

23

stopped by police.   What was critical to absolving defendant was not the source of

Maurice's drugs; rather it was Maurice's acknowledgement that the drugs were his.

That admission would have enabled Ronald to argue that the drugs recovered in the

house Maurice resided in were more likely Maurice's as well.

Maurice's statements were sufficiently corroborated by the evidence at

trial[12] and his conviction for possession with intent to distribute that cocaine.

Accordingly, counsel's apparent effort to develop the defense theory with

Maurice's admissions was thwarted by his basic misunderstanding of the hearsay

exception for statements against interest.   See, *Stouffer v. Reynolds*, 168 F.3d at

1163 (counsel's inability to properly prepare a defense the exhibit for admission

fell "below prevailing norms of representation")

### 2.    *Counsel's Failure to Impeach A Key Government Witness With Prior Inconsistent Testimony*

Counsel failed to bring up glaringly obvious grounds for impeaching Officer

Vincent Norris, the sole eyewitness to defendant's suspected drug distributions on

September 16, 2011.  *See, e.g. Reynoso v. Giurbino,* 462 F.3d 1099, 1114 (9th

Cir.2006)(finding ineffective assistance where counsel did not cross-examine the

two eyewitnesses about obvious bias).

---

[12] Government drug expert estimated the value of the cocaine at $4,000, a point the government emphasized demonstrated Maurice's guilt.  App: 61.

24

Officer Norris testified in detail about his observations of defendant's suspected drug distributions on September 16, 2011. That testimony was necessarily inconsistent with his testimony at the first trial in several respects. For example, at trial Norris was sure that Pounds and Baker arrived on the porch at the same time, entering and exiting the house together. By comparison, at the first trial he testified that their transactions were each conducted alone with defendant and separated in time. *Cf.* App: 76-79 *with* App: 51, 54-55.

With respect to the first transaction by the unidentified buyer that Norris claimed occurred prior to Pounds arriving in the vehicle, he testified at the first trial that for the first 30-40 minutes he didn't see anyone approach defendant on the porch and the first person to approach defendant on the porch was Pounds. *Cf.* App: 74 *with* App: 50, 54. Moreover, at trial Norris claimed that the first unidentified individual "had his hand clutched" when he exited the house and did not have anything in his hand when he went in. App: 75. At the first trial, however, Norris attributed the hand clutching to Baker. App: 52-53.

Counsel sought to discredit Norris' testimony about what he saw by cross-examination focusing on his failure to contemporaneously record his observations. App: 81-83. However, he failed to discredit him in the most direct and effective way possible—with his prior inconsistent testimony. Such impeachment would have provided a far more compelling reason for the jury to reject what was the core

25

of the government case against defendant—that what Norris observed looked like drug transactions. Absent those prior September 16, 2011 sales there is precious little to connect defendant to October 21, 2011 drugs.

### 3.    *Counsel Failed to Object to the Prosecutor's Improper Argument*

Counsel failed to object when the prosecutor, improperly urged the jury to consider defendant's prior drug convictions as evidence that "he had the intent to sell drugs ... on Sept. 16 of 2011." App: 135. Defendant's decades old convictions were not admitted for that purpose but rather for the very "limited purpose of determining whether the government has proved beyond a reasonable doubt that Mr. Williams intended to possess the illegal drugs found in this case." App: 108. The only "illegal drugs found in this case" that the government had to prove defendant intended to possess beyond a reasonable doubt were those charged in the two substantive counts of possession with intent to distribute "on or about October 21, 2011." App: 33-34 (counts Four and Five)

Not only did the prosecutor's argument run afoul of the court's admissibility ruling, but the only way for jurors to make the determination that defendant "intended to sell drugs ...on Sept. 16" based on his prior drug convictions was to employ the very propensity reasoning that Rule 404(b) prohibits. In blatant terms the prosecution told the jurors defendant's intent to sell in this case should be inferred from his having sold in the prior cases; the exact abuse prohibited by the

26

rule. See, *United States v. Bell,* 516 F.3d 432, 443-444 (6th Cir.2008). The
prosecutor's argument constitutes egregious misconduct and counsel's failure to
object and at a minimum obtain a curative instruction cannot be considered a
reasonable strategic decision.

### 4.    *Cumulative Effect of Counsel's Deficiencies at Trial Prejudiced Defendant*

The defense theory was that Maurice was "the drug dealer in this case,"
App: 139, and that the evidence that defendant was distributing drugs on
September 16, 2011 was nothing more than "innuendo." App: 138.

Any effort to develop that theory was thwarted by defense counsel's
objective incompetence. He failed to introduce Maurice's admissions of guilt to
the 1/8 kilo of cocaine found on October 21, 2011. He failed to impeach the only
eyewitness to defendant's suspected September 16, 2011 distributions with his
prior inconsistent observations and allowed the government to improperly tell the
jury it could find that defendant did sell drugs on September 16, 2011, and thereby
conspired to do so by misusing other crimes evidence. Accordingly, the record
conclusively shows that defendant is entitled to a new trial for counsel's ineffective
assistance. Alternatively, this case should be remanded for an evidentiary hearing
to further develop the record in these respects.

27

### C.    THIS CASE SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING ON DEFENDANT'S CLAIM THAT COUNSEL WAS INEFFECTIVE DURING PLEA NEGOTIATIONS

Defendant received ineffective assistance of counsel with respect to the decision to stand trial and not waive that right.    On January 3, 2013, prior to the retrial, the government extended a Rule 11(c)(1)(C) plea offer in which it would agree to a sentence of 84 months if defendant pleaded guilty to conspiracy.  App: 37.  That offer expired on January 14, 2013.  *Id.*

Defendant alleges that counsel failed to timely communicate that offer to him and incorrectly advised him that his maximum exposure if he lost at trial was ten years.  App: 38-39.  Had counsel properly advised defendant that he sentencing exposure as a career offender was 360 months to life with a mandatory minimum of ten years[13] and timely communicated the plea offer, defendant would have accepted the seven year plea offer.  *Id.*  Because defendant's allegations raise a colorable claim of ineffective assistance and because the record was not previously explored below, remand is warranted.

### 1. *Colorable Claim of Deficient Performance*

A criminal defendant has a Sixth Amendment right to counsel that extends to the plea-bargaining process.  *Lafler v. Cooper*, __ U.S. __; 132 S. Ct. 1376,

---

[13] Prior to trial the government filed a notice of prior convictions and enhanced sentence pursuant to 21 U.S.C. § 851 which increased his sentence if convicted to not less than ten years and not more than life.  App: 35-36.

28

1384 (2012).  At the plea stage, defense counsel has a well-established duty to

provide objective, affirmative advice.  *See, e.g. Padilla v. Kentucky,* 559 U.S. 356,

366-368 (2010).

　This advice should include counsel's "informed opinion as to what plea

should be entered." *Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948); *see also*

*Libretti v. United States,* 516 U.S. 29, 50 (1995)("[I]t is [generally] the

responsibility of defense counsel to inform a defendant of the advantages and

disadvantages of a plea agreement.")  The attorney "must actually and substantially

assist his client in deciding whether to plead guilty" *Herring v. Estelle,* 491 F.2d

125, 128 (5th Cir. 1974), with advise that suffices to permit the defendant to make

"an informed and conscious choice" to accept or reject the offer.  *Colson v. Smith,*

438 F.2d 1075, 1079 (5th Cir. 1971); *United States v. Day,* 969 F.2d 39, 43 (3d Cir.

1992)("defendant has the right to make a reasonably informed decision whether to

accept a plea offer.")

　To fulfill this duty counsel must first communicate formal plea offers

extended by the prosecution. *Missouri v. Frye*, __U.S. __; 132 S. Ct. 1399, 1408

(2012).  Counsel must "inform the defendant of …the alternative sentences to

which he will most likely be exposed." *Purdy v. United States,* 208 F.3d 41, 45

(2d Cir. 2000)(quotations and citations omitted.)

　Accordingly, awareness of

> [t]he structure and basic content of the [Federal Sentencing]
> Guidelines (including the definition and implications of career
> offender status) has become a necessity for counsel who seek to give
> effective representation.

*United States v. Day,* 969 F.2d at 43. This court has found deficient performance where counsel fails to correctly advise clients of the career offender sentencing consequences when determining whether to accept or reject a plea offer. *United States v. Gaviria,* 116 F.3d 1498, 1512 (D.C. Cir. 1997)(failure to correctly advise client regarding career offender status satisfies first Strickland prong); *United States v. McCoy,* 215 F.3d 102, 108 (D.C. Cir. 2000); *In re Sealed Case,* 488 F.3d 1011 (D.C. Cir. 2007)(assuming deficient performance where counsel alleged to have failed to inform client that he qualified as a career offender when deciding whether to accept or reject the plea offer).

Applying these standards, defendant clearly raises a colorable claim of deficient performance. The government's seven-year plea offer pursuant to Rule 11(c)(1)(C) expired on January 14, 2013. Defendant alleges in his affidavit that counsel did inform him of that offer until after it had already expired. Defendant also alleges that counsel did not advise him of his career offender status under the sentencing guidelines and affirmatively misadvised him that his sentencing exposure was no more than ten years. If any of these allegations are true, counsel's performance fell below an objective standard of reasonableness. See, *Missouri v. Frye,* 132 S.Ct. at 1410; *United States v. Thompson,* 721 F.3d at 714.

## 2.    *Colorable Claim that Defendant Was Prejudiced By Counsel's Deficient Performance*

A colorable claim of prejudice is raised by counsel's alleged inadequate assistance in this case. In *Lafler,* the Supreme Court addressed the application of *Strickland* prejudice test where as here the ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. *Lafler v. Cooper,* 132 S. Ct. at 1383. Recognizing the central role that plea bargaining plays in securing convictions and determining sentences, the Court rejected the notion that a fair trial wipes clean any defective performance by defense counsel during plea bargaining. *Id.* at 1388. Rather, *Strickland* prejudice in these circumstances requires a defendant to show,

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

It cannot be disputed that the terms of the offer to plead guilty to a single count of conspiracy and a guaranteed sentence of 84 months were less severe than the judgment of conviction on three counts of violating the narcotics laws and a sentence of 156 months that was in fact imposed. It is also clear that the offer was

31

available for acceptance through January 14, 2012. Defendant has stated in his affidavit that he would have accepted that agreement had he been properly advised by counsel.

Moreover, objective factual evidence corroborates defendant's assertion that he would have pleaded guilty but for deficient performance. This court has recognized that a substantial sentencing disparity is sufficient to establish a colorable claim that a properly informed and advised defendant would have accepted the prosecution's offer. *United States v. Gaviria,* 116 F.3d at 1513 ("[w]e think it quite likely that Gaviria would have accepted the plea offer. After all, fifteen to twenty-two years for a man in his mid-forties is significantly less than life imprisonment.) The *Gaviria* court remanded the case for a hearing to determine whether Gaviria would have taken the Government's plea offer had he known of his true exposure under the Guidelines. *Id.* at 1514. As in *Gaviria* there exists a significant disparity between Mr. Williams' exposure on the retried counts under the sentencing guidelines (360 to life) and the 84 month Rule 11(c)(1)(C) plea offer. For fifty-two-year-old Williams the difference between 30 years and 7 is significant.

Another factor in analyzing the defendant's claim of prejudice is "the strength of the defenses" he had against the charges. *In re Sealed Case*, 488 F.3d at 1018. Defendant's lack of knowledge defense to the more than 28 grams of

32

crack cocaine packaged for distribution immediately inside the front door of the house on October 21, 2011 in close proximity to his car keys was weak in light of defendant's suspected drug distributions from the house on September 16, 2011 and his prior distribution convictions.

If defendant had been represented by knowledgeable counsel at the time he was presented with an opportunity to plead guilty, counsel would have told him he faced the following choice: On one hand he could accept the offered plea agreement and receive a sentence of 84 months. On the other hand he could go to trial and even if he were acquitted of conspiracy, he faced the overwhelming likelihood that he would, at a minimum, be convicted of the substantive crack cocaine count that carried a career offender guideline range of 360 months to life and a mandatory ten-year sentence.

Although Mr. Williams was ultimately sentenced below his applicable guideline range to 156 months, at age fifty-two, the 84 month plea offer is still significantly less than the sentence he received.[14]  Because defendant has presented a colorable claim of ineffective assistance of counsel, remand is warranted for an evidentiary hearing.

---

[14] It is also less than the ten year mandatory minimum Williams faced as a result of the government's § 851 Notice file subsequent to the lapsed plea offer.

33

## CONCLUSION

For the foregoing reasons defendant respectfully request that his conspiracy conviction be vacated for insufficient evidence or alternatively for ineffective assistance of counsel; that the remaining convictions be vacated and the case remanded for a new trial or alternatively, remanded for an evidentiary hearing on defendant's ineffective assistance of counsel claims.

Respectfully submitted,

Jonathan Zucker, #384629
1350 Connecticut Avenue, NW
Suite 202
Washington, DC  20036
(202) 624-0784

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7962 words, excluding the parts of the brief exempted by Fed.R. App. P. 32(a)(7)(B)(iii) and DC Cir. R. 32(a)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2010* in *14pt Times New Roman* font.

Dated:  February 18, 2014

Jonathan Zucker

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 18th day of February, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Elizabeth Trosman
OFFICE OF THE U.S. ATTORNEY
555 4th Street, NW
Washington, DC  20530

I further certify that on this 18th day of February, 2014, I caused the required number of bound copies of the Brief of Appellant and Appendix to be hand-filed with the Clerk of the Court, and one bound copy of the Appendix to be served, via US Mail to counsel for the Appellee, at the above address.

Jonathan Zucker

35

## ADDENDUM

**A.    U.S. Constitution, Amendment V**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**B.    U.S. Constitution, Amendment VI**

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

**C.    21 U.S.C.A. § 851**

**§ 851. Proceedings to establish prior convictions**

(a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person)

- 1 -

stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

**(2)** An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

**D.     Federal Rules of Criminal Procedure, Rule 11**

**Rule 11. Pleas**

. . .

**(c) Plea Agreement Procedure.**

**(1) In General.** An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

**(A)** not bring, or will move to dismiss, other charges;

**(B)** recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

- 2 -

Sentencing Guidelines, or policy statement, or sentencing factor does or does not

apply (such a recommendation or request does not bind the court); or

**(C)** agree that a specific sentence or sentencing range is the appropriate

disposition of the case, or that a particular provision of the Sentencing Guidelines,

or policy statement, or sentencing factor does or does not apply (such a

recommendation or request binds the court once the court accepts the plea

agreement).

**(2) Disclosing a Plea Agreement.** The parties must disclose the plea agreement in open

court when the plea is offered, unless the court for good cause allows the parties to

disclose the plea agreement in camera.

**(3) Judicial Consideration of a Plea Agreement.**

**(A)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A)

or (C), the court may accept the agreement, reject it, or defer a decision until the

court has reviewed the presentence report.

**(B)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B),

the court must advise the defendant that the defendant has no right to withdraw

the plea if the court does not follow the recommendation or request.

**(4) Accepting a Plea Agreement.** If the court accepts the plea agreement, it must inform

the defendant that to the extent the plea agreement is of the type specified in Rule

11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.

**(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement containing

provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the

following on the record and in open court (or, for good cause, in camera):

- 3 -

(A) inform the parties that the court rejects the plea agreement;

(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

## E.    Federal Rules of Evidence Rule 401

**Rule 401. Test for Relevant Evidence**

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

## F.    Federal Rules of Evidence Rule 404(b)

**(b) Crimes, Wrongs, or Other Acts.**

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial--or during trial if the court, for good cause, excuses lack of

pretrial notice.

**G.      Federal Rules of Evidence Rule 804**

**Rule 804. Exceptions to the Rule Against Hearsay--When the Declarant Is      Unavailable as a Witness**

**(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if

the declarant:

**(1)** is exempted from testifying about the subject matter of the declarant's statement

because the court rules that a privilege applies;

**(2)** refuses to testify about the subject matter despite a court order to do so;

**(3)** testifies to not remembering the subject matter;

**(4)** cannot be present or testify at the trial or hearing because of death or a then-existing

infirmity, physical illness, or mental illness; or

**(5)** is absent from the trial or hearing and the statement's proponent has not been able, by

process or other reasonable means, to procure:

**(A)** the declarant's attendance, in the case of a hearsay exception under Rule

804(b)(1) or (6); or

**(B)** the declarant's attendance or testimony, in the case of a hearsay exception

under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully

caused the declarant's unavailability as a witness in order to prevent the declarant from attending

or testifying.

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant

is unavailable as a witness:

- 5 -

**(1) Former Testimony.** Testimony that:

    **(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

    **(B)** is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

**(2) Statement Under the Belief of Imminent Death.** In a prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.

**(3) Statement Against Interest.** A statement that:

    **(A)** a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

    **(B)** is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

**(4) Statement of Personal or Family History.** A statement about:

    **(A)** the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or

- 6 -

**(B)** another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage or was so intimately associated with the person's family that the declarant's information is likely to be accurate.

**(5) [Other Exceptions.]** [Transferred to Rule 807.]

**(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.** A statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result.